UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN MEADE,

        Plaintiff,

v.

TRAVELERS MANAGEMENT GROUP LLC,
REEL TIME CAPITAL, LLC,
GLOBAL TRUST MANAGEMENT LLC,
QUICK PROCESSING SOLUTIONS LLC,
BRADLY W. SPOOR,
PAMELA ANN DAVIS, and
CHARLES KEITH JOHNSON,

        Defendants.

_____/

## COMPLAINT

### I.   Introduction

1.     Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and non-existent debt. Defendants are credit identity thieves and debt collectors, who acquired plaintiff's stolen personal and financial information along with the counterfeit account, and contacted and falsely threatened plaintiff with litigation and other adverse consequences, unless plaintiff paid defendants money to satisfy the non-existent debt.

2.     Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,*

and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

3.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.    These schemes are epidemic and are operated by hundreds of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.    On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

6.    On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice

known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/
09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a
felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification
of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful
activity that constitutes a violation of Federal law . . . ." The act defines a "means of
identification" to include an individual's "name, social security number, date of birth," and other
information. It is an express violation of the FDCPA to commit a crime in connection with the
collection of any debt.

## II.    Jurisdiction

8.     The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §
2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding
plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper
because the pertinent events took place here.

## III.    Parties

9.     Plaintiff Justin Meade is an adult, natural person residing in Kent County,
Michigan. Mr. Meade is a "consumer" and "person" as the terms are defined and used in the
FDCPA. Mr. Meade is a "person" as the term is defined and used in the DPPA. Mr. Meade is a
"consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.     Defendant Travelers Management Group LLC ("TMG") is a Delaware limited
liability company, formed on or about October 12, 2022. TMG purportedly operates at 1316 East
Black Street, Rock Hill, South Carolina 29730. TMG also operates at 4805 West Laurel Street,

3

Suite 300, Tampa, Florida 33607. The TMG registered agent is United States Corporation

Agents, Inc., 651 N. Broad Street, Suite 201, Middletown, Delaware 19709. TMG uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

TMG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

to be owed or due another. TMG is a "debt collector" as the term is defined and used in the

FDCPA. TMG is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, TMG is a "collection agency" and "licensee" as the terms are defined and used in

the MOC.

11.    On  January 25, 2022, defendants registered the internet domain www.tmgllc.biz

through Godaddy.com, LLC. The domain links to an active website that describes TMG as a debt

collection agency and states: "We pride ourselves on adhering to the highest standards of quality

in the industry. The founders and management team at Travelers Management Group have over

40 years of combined experience in the field of debt collection." The website provides contact

telephone numbers 866-745–0075 and 888-985-4230 and email addresses info@tmgllc.biz, and

info@tmgllc.co, but does not provide a business address. Defendants use the domain to

communicate by email with consumers, using multiple email addresses, including

cjohnson@tmgllc.biz.

12.    Defendants own, control and use a Merchant Account established in the name of

Travelers Management Group LLC, also known as "TravMgmtGrp," telephone number 866-745-

0075, purportedly located in South Carolina, to receive credit card and debit card payments from

their victims. Money deposited in the Merchant Account is shared among and distributed to the

defendants named in this lawsuit, their employees and agents, and perhaps others. The

application that was filed by defendants with the Acquiring Bank to create the Merchant

Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' credit identity theft and debt collection scam.

13.     TMG through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

14.     TMG through its employees and agents, directly and indirectly participated in the acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

15.     Defendant Reel Time Capital LLC ("RTC") is a Delaware limited liability company, FEIN 82-080xxxx, formed on or about March 3, 2017. RTC operates at 4805 West Laurel Street, Suite 300, Tampa, Florida 33607. On August 22, 2017, RTC filed an Application for Certificate of Authority to Transact Business in Michigan. The RTC registered agent in Michigan is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911. RTC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RTC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. RTC is a "debt collector" as the term is defined and used in the FDCPA. RTC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, RTC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

16.     On June 2, 2017, defendant Bradly W. Spoor on behalf of RTC filed with the State of Florida, an Application by Foreign Limited Liability Company for Authorization to

Transact Business in Florida. The cover letter filed along with the application provided a RTC contact telephone number of 813-400-2058, which is the same contact telephone number used by TMG and defendant Charles Keith Johnson in the email and letter sent by TMG and Mr. Johnson to Mr. Meade and that are attached to this complaint as Exhibit A.

17.     RTC is licensed (No. CCA9904764) as a Consumer Collection Agency by the State of Florida, telephone number 813-579-9395, doing business at 4805 West Laurel Avenue, Suite 300, Tampa, Florida 33607.

18.     On March 1, 2017, defendants registered the internet domain www.reeltc.com through Godaddy.com, LLC. The domain links to an active website that describes RTC as a debt collection agency and states: "Reel Time Capital, LLC wants to be your long term partner for all of your Debt Buying, Selling and Collection related needs." The website provides a contact telephone number 877-255-2153 and email address info@reeltc.com.

19.     RTC through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

20.     RTC through its employees and agents, directly and indirectly participated in the acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

21.     Defendant Global Trust Management LLC ("GTM") is a Florida limited liability company, FEIN 38-385xxxx, formed on or about December 12, 2011. GTM operates at 4805 West Laurel Street, Suite 300, Tampa, Florida 33607. On March 21, 2013, GTM filed an Application for Certificate of Authority to Transact Business in Michigan. The GTM registered agent in Michigan is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911. GTM uses interstate commerce and the mails in a business

6

the principal purpose of which is the collection of debts. GTM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GTM is a "debt collector" as the term is defined and used in the FDCPA. GTM is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, GTM is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     GTM is licensed (No. CCA9904763) as a Consumer Collection Agency by the State of Florida, telephone number 813-579-9395, doing business at 4805 West Laurel Avenue, Suite 300, Tampa, Florida 33607, which are the same address and telephone number for RTC.

23.     On December 12, 2011, defendants registered the internet domain www.gtmcorporation.com through Godaddy.com, LLC. The domain links to an active website that describes GTM as a debt collection agency and states: "[At GTM], we pride ourselves on adhering to the highest standards of quality in the industry. The founders and management team at GTM have over 40 years of combined experience in the field of debt collection." The website provides a contact telephone number 855-875-2506 and email info@gtmcorporation.com. The website provides a business of address for GTM of 13046 Racetrack Road, "Suite 105," Tampa, Florida 33625, but the address is merely a private mail box located at The UPS Store #5672, which is used by defendant Bradly W. Spoor to conceal defendants' true location. The language used by defendants in the website is largely identical to the language used by defendants in the website for TMG.

24.     GTM through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

25.     GTM through its employees and agents, directly and indirectly participated in the

acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

26.    Defendant Quick Processing Solutions LLC ("QPS") is a Florida limited liability company, FEIN 90-063xxxx, formed on or about December 1, 2010. The Annual Report filed with the State of Florida by defendant Pamela J. Davies on behalf of QPS, falsely states that the "Current Principal Place of Business" for QPS is 13046 Racetrack Road, "Suite 105," Tampa, Florida 33625, but the address is merely a private mail box located at The UPS Store #5672, which is used by defendant Bradly W. Spoor to conceal defendants' true location. QPS actually operates at 4805 West Laurel Street, Suite 300, Tampa, Florida 33607, along with TMG, RTC and GTM. QPS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. QPS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. QPS is a "debt collector" as the term is defined and used in the FDCPA. QPS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, QPS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

27.    On December 2, 2010, defendants registered the internet domain www.quickprocessings.com through Godaddy.com, LLC. The domain links to an active website that describes QPS as providing "innovative payment processing solutions for your business." The website provides a contact telephone number 855-875-2506 (which is the same telephone number for GTM on the GTM website) and email info@quickprocessings.com.

28.    The letter and email sent by TMG and defendant Charles Keith Johnson to Mr. Meade and that are attached to this complaint as Exhibit A, provide contact telephone numbers

for TMG and Mr. Johnson of 813-289-2523 (fax) and 813-400-2058. However, both telephone numbers are registered to QPS.

29.    QPS through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

30.    QPS through its employees and agents, directly and indirectly participated in the acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

31.    Defendants TMG, RTC, GTM and QPS are sometimes collectively referred to as the "Corporate Defendants" in this complaint.

32.    Defendant Bradly W. Spoor is a natural person, age 44, purportedly residing at 11715 Glen Wessex Court, Tampa, Florida 33626. Mr. Spoor is an officer, member, manager, employee and agent of each of the Corporate Defendants. Mr. Spoor uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Spoor regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Spoor is a "debt collector" as the term is defined and used in the FDCPA. Mr. Spoor is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Spoor is a "collection agency" and "licensee" as the terms are defined and used in the MOC.  Mr. Spoor and his companies have been sued dozens of time in the United States District Courts for allegedly violating the FDCPA, using the same unlawful tactics that are described in this complaint.

33.    Mr. Spoor uses multiple telephone numbers and email addresses to conduct defendants credit identity theft and debt collection scam, including: 813-480-3939 and

info@pelicanbc.com. Non-party Pelican Bay Capital Inc is a Florida corporation incorporated August 19, 2010, owned and operated by Mr. Spoor, and falsely claiming in annual reports filed with the State of Florida to have the company's "Principal Place of Business" at 13046 Racetrack Road, "Suite 105," Tampa, Florida 33626, which is merely a private mail box rented from The UPS Store #5672 and used by Mr. Spoor to conceal defendants' true location.

34.    Mr. Spoor (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the letters, communications, scripts and tactics used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the letters, communications, scripts and tactics that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants, and their employees and agents, in attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

35.    Mr. Spoor directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

36.    Mr. Spoor directly and indirectly participated in the acquisition, disclosure and

use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

37.    Defendant Pamela Ann Davis is a natural person, age 70, purportedly residing at 9348 Lake Chase Island Way, Tampa, Florida 33626. Ms. Davis is a manager, employee and agent of each of the Corporate Defendants. Ms. Davis uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Davis regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Davis is a "debt collector" as the term is defined and used in the FDCPA. Ms. Davis is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Davis is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

38.    Ms. Davis (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the letters, communications, scripts and tactics used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the letters, communications, scripts and tactics that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate

11

Defendants, and their employees and agents, in attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

39.    Ms. Davis directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

40.    Ms. Davis directly and indirectly participated in the acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

41.    Defendant Charles Keith Johnson is a natural person, age 44, purportedly residing at 13418 Kitten Drive, Tampa, Florida 33617. Mr. Johnson is a manager, employee and agent of each of the Corporate Defendants. Mr. Johnson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Johnson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Johnson is a "debt collector" as the term is defined and used in the FDCPA. Mr. Johnson is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Johnson is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

42.    Mr. Johnson, as an employee and agent of the Corporate Defendants, uses multiple telephone numbers and email addresses to conduct defendants credit identity theft and debt collection scam, including: 813-451-9037, cjohnson@tmgllc.biz and cjohnson@reeltc.com.

43.    On May 4, 2023, Mr. Johnson sent an email and attached letter to Mr. Meade, which are attached this complaint as Exhibit A.

44.    In April 2017, Mr. Johnson received an award from GTM for three years of

service to the company.

45.    Mr. Johnson (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the letters, communications, scripts and tactics used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the letters, communications, scripts and tactics that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants, and their employees and agents, in attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

46.    Mr. Johnson directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Meade that are described in this complaint.

47.    Mr. Johnson directly and indirectly participated in the acquisition, disclosure and use of Mr. Meade's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

48.    Defendants and their employees and agents use multiple telephone numbers to conduct defendants' credit identity theft and debt collection scam, including: 517-507-5331; 813-

289-2523; 813-400-2058; 813-451-9037; 813-480-3939; 813-579-9392; 866-745-0075; 888-721-4767; and 888-985-4230.

49.     Plaintiff is proceeding against defendants collectively under multiple theories, including but not limited to a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

50.     All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and

severally for the unlawful acts of each defendant.

51.    Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

52.    An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, \*7-8 (W.D. Mich. Mar. 28, 2016).

53.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

54.    On or about June 4, 2015, plaintiff Justin Meade obtained a loan for a term of less than thirty days, via the internet, from an entity registered to transact business in Michigan under the assumed name CashNetUSA. Mr. Meade borrowed $400.00, structured as a "payday loan." The loan was made at an annualized interest rate of more than 300 percent. Mr. Meade became obligated to repay CashNetUSA the sum of $454.45. CashNetUSA assigned the transaction an original account number 16455706.

55.    In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*, which expressly provides that it is not a crime to fail to repay a payday loan.

56.    Mr. Meade used the borrowed funds solely to purchase goods and services for personal, family, and household purposes. Any resulting obligation of Mr. Meade to repay the borrowed money was a "debt" as the term is defined and used in the FDCPA, MCPA, and MOC.

57.    Mr. Meade became unable to repay the debt.

58.    CashNetUSA declared the account in default.

59.    CashNetUSA charged off the account.

60.    On or about May 27, 2016 CashNetUSA sold the charged-off account to non-party National Credit Adjusters, LLC ("NCA"). NCA assigned the account an internal and alternate NCA account number 12570224.

61.    When CashNetUSA sold the charged-off account to NCA, the account had an alleged unpaid balance of $454.45.

16

62.    On or about January 26, 2018, NCA sold the charged-off account to non-party NorAm Capital Holdings, Inc. ("NorAm").

63.    On or about February 1, 2018, NorAm sold the charged-off account to non-party Debt Management Partners, LLC ("DMP").

64.    DMP maintains an internet website at www.dmpcollections.com. The website contains a link through which consumers can look up accounts purchased by DMP and placed by DMP for collection with other entities. According to the DMP website, Mr. Meade's charged-off CashNetUSA account "was transferred to Capital Management Holdings – 866-255-5571, if their Phone Number does not work, please call back to DMP at 800-883-9067 and press number 4 for customer service during normal working hours."

65.    On or after February 1, 2018, DMP placed the charged-off account for collection with non-party Capital Management Holdings, LLC ("CMH").

66.    CMH shares space with and is affiliated with non-party Elite Debt Brokers, LLC ("EDB").

67.    Telephone calls placed to CMH at 866-255-5571 are answered with a pre-recorded greeting that states: "Hello, and thank you for calling Elite Debt Brokers. This communication is an attempt to collect a debt. Any information obtained will be used for that purpose."

68.    On May 10, 2023, DMP confirmed by telephone that Mr. Meade's charged-off account was placed for collection with EDB on February 1, 2018, and that EDB could be reached at telephone number 216-315-0182.

69.    Sometimes, telephone calls made to telephone number 216-315-0182 are

answered by a female with the words "American Debt Management."

70.     Other times, telephone calls made to telephone number 216-315-0182 are answered by the same female with the words "Collection Attorneys USA." Collection Attorneys USA LLC ("CAUSA") is an Ohio corporation, incorporated January 7, 2022. The registered agent for CAUSA is attorney Dean S. Hoover, 7671 Hudson Park Drive, Hudson, Ohio 44236.

71.     On February 22, 2022, the internet domain was www.causallc.com was registered anonymously through GoDaddy.com, LLC. The domain links to an active website that states CAUSA is a "Certified Professional Receivables Company" that specializes in "Collections" and "Debt Purchase and Sales Transactions" in "50 States."

72.     According to metadata contained in the letter sent by TMG to Mr. Meade and that is attached to this complaint as Exhibit A, was authored by American Debt Management. The true identity of American Debt Management will need to be determined in discovery so that the entity can be named as an additional defendant in this lawsuit.

73.     Mr. Meade's account and any related alleged debt are no longer judicially enforceable by operation of the Michigan six-year statute of limitations. Stated differently, the debt is now time-barred.

74.     Mr. Meade denies owing the alleged debt.

75.     Mr. Meade refuses to pay the alleged debt.

76.     The entities named as defendants in this complaint are the most recent group of credit identity thieves and debt collection scam operators to obtain stolen information regarding the account as well as Mr. Meade's stolen personal and financial information, and use that information to contact and falsely threaten Mr. Meade with litigation, prosecution, and other

adverse consequences, in efforts to coerce Mr. Meade into paying a debt that Mr. Meade does not

owe and that defendants have no right to collect.

77.    On March 27, 2023, defendants' employee and agent, known as a "Point Caller,"

placed a call from telephone number 517-507-5331 to Mr. Meade's cellular telephone and left a

scripted message on Mr. Meade's voice mail, stating that "this important message is from Mr.

Justin Meade," that the caller's name was "Abigail Johnson" with "Location Services," calling

about "a Complaint that's gonna be filed against [Mr. Meade,]" that Mr. Meade was going to be

served with the lawsuit at his residence or place of employment, and that Mr. Meade had "the

right to contact" defendants "by telephone at 866-745-0075" to "prevent charges from being

filed."

78.    On May 4, 2023, in response to defendants' false threats of litigation and other

adverse consequences, Mr. Meade authorized a payment of $100.00 to defendants by debit card,

which defendants caused to be deposited in a Merchant Account maintained in the name of

Travelers Management Group, also known as "TravMgmtGrp," located in South Carolina,

telephone number 866-745-0075. The payment posted on May 5, 2023.

79.    On May 4, 2023, defendants' employee and agent, who identified himself as

"Charles Johnson," the "Floor Manager" at Travelers Management Group LLC, sent an email

from cjohnson@tmgllc.biz to Mr. Meade. The email stated: "Hello Justin Meade, The attached

letter contains both the original account number with CashNet and a summary of your payment

schedule. Please let us know if you have any other questions. Thank you." Attached to the email

was a letter on the letterhead of "Travelers Management Group, PO Box 11283, Rock Hill, SC

29730, www.tmgllc.biz, Toll Free: 1-866-745-0075, Fax: 813-289-2523." The letter stated that

Mr. Meade owed a balance of $701.61 on CashNetUSA Original Account Number 16455706, and named defendant Reel Time Capital, LLC as the "Current Creditor" for whom Travelers Management Group LLC was attempting to collect the alleged debt from Mr. Meade. According to metadata embedded in the letter, the letter was authored by "American Debt Management." A copy of the emails and letter are attached to this complaint as Exhibit A.

80.    The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce and extort the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of consumers' stolen account and personal information.

81.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

82.    Defendants and their employees and agents falsely identified themselves as "Location Services."

83.    Defendants and their employees and agents falsely represented and inflated the amount of Mr. Meade's alleged debt.

84.    Defendants and their employees and agents falsely represented that Mr. Meade owed a debt that is not owed.

85.    Defendants and their employees and agents falsely represented that they were entitled to collect that they had no right to collect.

86.    Defendants and their employees and agents falsely represented the identity of the

entity to whom the alleged debt is owed.

87.    Defendants and their employees and agents falsely represented that defendants represent CashNetUSA.

88.    Defendants and their employees and agents falsely represented that Mr. Meade owed $701.61 in connection with CashNetUSA account number 16455706.

89.    Defendants and their employees and agents falsely represented that Mr. Meade's loan from CashNetUSA, account number 16455706, was originated on September 16, 2021.

90.    Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a stolen or counterfeit account, as well as Mr. Meade's stolen personal and financial information, in an effort to coerce the payment of money from Mr. Meade.

91.    Defendants and their employees and agents wrongfully and falsely represented and falsely implied that a lawsuit was being filed against Mr. Meade to collect a time-barred debt, when in fact, the debt was no longer judicially enforceable by operation of Michigan's six-year statute of limitations.

92.    Defendants and their employees and agents falsely represented and falsely implied that they are attorneys and a law firm.

93.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

94.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit would be filed against Mr. Meade to collect the alleged debt.

95.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed against Mr. Meade to collect the alleged debt.

21

96.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade had committed a crime.

97.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade was going to be served with legal process at his residence or place of employment.

98.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade would be charged with a crime.

99.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade would be prosecuted.

100.    Defendants and their employees and agents falsely represented and falsely implied that criminal charges had been filed in court against Mr. Meade.

101.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade's wages would be garnished.

102.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade's assets would be subjected to liens and seized.

103.    Defendants and their employees and agents falsely represented and falsely implied that the courts were participating in defendants' efforts to extort the payment of money from Mr. Meade.

104.    Defendants did not intend to file a lawsuit against Mr. Meade in any court in efforts to collect the alleged debt.

105.    No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any consumer.

106.    Defendants and their employees and agents wrongfully and falsely represented that defendants were not required to provide Mr. Meade with any validation of the debt or paperwork regarding the debt until after Mr. Meade paid money to defendants to satisfy the alleged debt.

107.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

108.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

109.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

110.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

111.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

112.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

113.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

114.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

115.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

116.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

117.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

118.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

119.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

120.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

121.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

122.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

123.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

124.    Defendant and his employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

125.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

126.    Defendants and their employees and agents failed to timely send to Mr. Meade a notice containing the information required by 15 U.S.C. § 1692g(a).

127.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

128.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

129.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

130.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

131.    Michigan law, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

132.    Defendants and their employees and agents engaged in criminal extortion, a felony, in their efforts to coerce the payment of money from Mr. Meade. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

133.    Defendants and their employees and agents violated the Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money

26

from Mr. Meade. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

134.    In connection with efforts to collect an alleged debt from Mr. Meade, defendants and their employees and agents obtained and used personal information regarding Mr. Meade from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

135.    The database used by defendant was derived in part from non-public motor vehicle  records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

136.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

137.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

27

18 U.S.C. § 2722.

138.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

139.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

140.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

141.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Meade.

142.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Meade.

143.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Meade that was derived from Mr. Meade's motor vehicle record.

144.    Alternatively, the entity that obtained Mr. Meade's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Meade that was derived from Mr. Meade's motor vehicle record.

28

145.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

146.    Defendants knowingly obtained, disclosed and used Mr. Meade's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

147.    Defendants did not have a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Meade's personal information obtained from the database.

148.    Defendants did not have Mr. Meade's consent, permission, authorization or waiver to obtain Mr. Meade's personal information from the database.

149.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

150.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

151.    Defendants intentionally and wilfully violated the DPPA.

152.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

29

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

153.    Plaintiff incorporates the foregoing paragraphs by reference.

154.    Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

155.    Plaintiff incorporates the foregoing paragraphs by reference.

156.    Defendants have violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)    Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)    Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)    An injunction prohibiting defendants from further obtaining, using or disseminating plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

e)    An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

157.    Plaintiff incorporates the foregoing paragraphs by reference.

158.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 445.257(2);

b)    Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)    Statutory damages pursuant to M.C.L. § 445.257(2);

d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)    Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

159.    Plaintiff incorporates the foregoing paragraphs by reference.

160.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

32

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


Dated: June 26, 2023                         /s/ Phillip C. Rogers
                                             Phillip C. Rogers (P34356)
                                             Attorney for Plaintiff
                                             Centennial Plaza, Ste. 205
                                             2851 Charlevoix Dr. SE
                                             Grand Rapids, MI 49546-7090
                                             (616) 776-1176
                                             ConsumerLawyer@aol.com